COULSTON et al. v. H. FRANKE STEEL RANGE CO., Inc.

(District Court, N. D. Ohio, E. D.    March 8, 1915.)

No. 273.

1. COURTS ⚮347—EQUITY—ANSWER—FORM AND SUFFICIENCY.

Under equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi), providing that the answer shall in short and simple terms set out the defense to each claim asserted by the bill, omitting statements of evidence and avoiding any general denial, but specifically admitting, denying, or explaining the

facts upon which plaintiff relies, and that the answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may set out any set-off or counterclaim, such answer should contain a general or specific denial of each material allegation controverted by the defendant, and a statement in ordinary and concise language of any new matter constituting a defense, counterclaim, or set-off.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ☜347.]

2. PATENTS ☜310—INFRINGEMENT SUITS—PLEADING—SUFFICIENCY OF ANSWER.

Under equity rule 30, where, in a patent case, defendant pleads a number of patents as showing the state of the prior art, upon which the claims of invalidity and limited scope of complainant's patent are based, he will be required on motion to set forth in what respects each of the patents pleaded by him discloses any of the elements or combinations of elements described in plaintiff's patent, and in what respect they negative the novelty and invention of the device therein shown and described.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. ☜310.]

3. PATENTS ☜310—INFRINGEMENT SUITS—PLEADING—SUFFICIENCY OF ANSWER.

It was not a ground for denying an application to require the defendant in a patent case to make its answer specific, by stating in what respects patents pleaded as showing the state of the prior art disclosed any of the elements or combinations of elements described in plaintiff's patent, or negatived the novelty and invention of the device therein shown and described, that defendant did not know whether plaintiff intended to claim that all of the parts in the construction involved were old, but that the combination itself was new, or that the claims of the patent specified some new element, or new form of an old element, as defendant, by the timely interposing of a motion, might have secured a sufficient definition of the claims in the bill to enable him to know just what case he has to meet.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. ☜310.]

In Equity. Suit by Earl V. Coulston and another against the H. Franke Steel Range Company, Incorporated. On motion to require defendant to make its answer more definite and certain. Motion sustained.

Weed, Miller & Rothenberg, of Cleveland, Ohio, for complainants. Thurston & Kwis, of Cleveland, Ohio, for defendant.

CLARKE, District Judge. This cause came on for hearing upon the motion of the plaintiff that the defendant be required to make its answer more definite and certain, by setting forth in what respects each of the patents pleaded by reference in paragraph 8 of the answer discloses any of the elements or combinations of elements described in plaintiff's letters patent, and in what respect they negative the novelty and invention of the device shown and described in complainant's letters patent set forth in the bill of complaint.

[1] This court is in entire sympathy with this motion, believing, as we do, that the pleading objected to by the motion does not conform to the provisions of equity rule No. 30 (198 Fed. xxvi, 115 C. C. A. xxvi),

requiring the defendant in its answer to set out its defense to each claim asserted by the bill in short and simple terms. It seems to me to be the purpose of this rule to establish in equity cases substantially the rule of pleading provided by such Codes as that of the state of Ohio, the requirement of which with respect to the answer in a case either at law or in equity is that it shall contain a general or specific denial of each material allegation controverted by the defendant, and a statement in ordinary and concise language of any new matter constituting a defense, counterclaim, or set-off.

[2] It is the practice in patent cases for counsel to refer to a great number of patents as showing the state of the prior art upon which the claims of invalidity and limited scope of the patent sued upon are based, and when the case comes to trial it is usual to find counsel relying upon only a very small number of such patents, and often upon one, or at most a few of the many features contained in them.

In a recent case this court had as many as 30 patents pleaded and introduced in evidence as indicating the state of the prior art, but in argument of counsel reference was made to not more than 3 or 4 of all this number. In another case recently before this court, the defendant pleaded perhaps a dozen United States and foreign patents as necessary to show the state of the prior art, which was relied upon to defeat the patent sued upon. The patent in issue in this same case had been before the courts of the Western district of Pennsylvania in an earlier case, and in that case in the answer there was reference to about 130 patents, of which only 12 or 13 were relied upon on the trial. In another recent case before this court the bill declared upon some 20 claims in a patent, but when the case was called for trial counsel voluntarily limited their claim of right to only 2 of these 20 claims of the patent. This court has under consideration now a case in which there have been introduced in evidence 49 United States patents, 7 foreign patents, 59 publications, and 16 prior uses, making in all 131 items of evidence, and of these not more than a dozen are referred to in argument.

It is plain that from this manner of pleading it results that a trial court has no guide whatever, when hearing oral testimony, for determining what is relevant and what not relevant to the issue, when the state of the prior art is relied upon as a defense. It is obvious, also, that under the former practice there were means of defining the issues before the hearing which do not exist under the new practice, and I am convinced that it was the purpose of the new rules to require that counsel shall so study the patents upon which they intend to rely that in their pleadings they can state in short and simple terms just what they claim with respect to them, rather than to defer such study until after a record is made up of volumes of irrelevant matter, and then, by study and analysis, to pick out what is essential to a decision of the case.

Counsel defending against this motion say that the practice followed in this answer conforms to the practice which has prevailed in this court for more than a score of years. This is no doubt true, but the very purpose of these new equity rules is to change this former practice, because it has been found to be expensive to litigants, burdensome to courts, and a fruitful source of delay of justice. It is also urged that

it is for the court to determine whether the patents referred to, or any of them, by their disclosures negative novelty or invention. With this the court cannot agree, but is of opinion that it is for the court to determine whether the claims properly made in the pleadings in a case with respect to patents referred to negative novelty or invention, and that the new rules require this changed manner of pleading, to the end that such claims shall be more clearly defined in the pleadings than heretofore, so that, when cases are called for trial in open court, both judge and counsel may be definitely advised as to just what the claims of the respective parties are.

[3] Counsel frankly confess that in what they call "the final showdown" (whatever that may mean) they will not introduce all the patents referred to in their answer, but they contend that until the plaintiffs shall so far disclose their position that the defendant may know whether they intend to claim that all of the parts in the construction involved are old, but that the combination itself is new, or whether they intend to contend that the claims of the patent relied upon are valid, because they specify either some new element or some new form of an old element, etc., the defendant should not be required to specify what particular defensive patent will be relied upon, or what particular thing in the evidence of the prior art will be relied upon as the final reason that the claims of the plaintiff's patent are invalid.

To this claim of counsel the answer suggests itself that the timely interposing of a motion might have secured a sufficient definition of the claims of the plaintiffs in the bill to have enabled the defendant to know just what case it is to meet. This court cannot refrain from observing in this connection that the old notion that a suit at law or in equity is chiefly a game affording an opportunity for the matching of wits of counsel and for the exercise of the ingenuity of courts is fast giving place to the conception that suits both at law and in equity should be sincere and candid attempts to reach the real point of difference between the parties to them, and to secure a just settlement of such difference.

With this now current conception of a suit in equity in mind, it seems to this court that the application of the new equity rules to patent cases should command the cordial support and assistance of the bar, without which, of course, judges will be in large part powerless to give them full effect. It may be that there is much in the claim often made that the new equity rules cannot be successfully applied to pleading in patent cases, but several judges throughout the country, notably in the Southern district of New York and in Massachusetts, are making a determined effort to give the application of them to such cases a fair trial. With this effort this court is in entire sympathy, both from its conviction that it is its duty to give effect to these rules prescribed by the Supreme Court of the United States, and also because of its conviction that their application to such cases will greatly curtail the extent of records made up in them, and so the expense to litigants, and will result in a genuine reform, leading to a more prompt decision of cases, and also to a larger measure of justice in the determination of them. Delay of decision and excessive cost often defeat justice.

The motion will be sustained.